UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

TIMOTHY B.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

---

**DECISION AND ORDER**

1:20-CV-01668 EAW

**INTRODUCTION**

Represented by counsel, Plaintiff Timothy B. ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 11; Dkt. 12), and Plaintiff's reply (Dkt. 13). For the reasons discussed below, Plaintiff's motion (Dkt. 11) is granted in part, the Commissioner's motion (Dkt. 12) is denied, and the matter is remanded to the Commissioner for further proceedings consistent with this Decision and Order.

## BACKGROUND

Plaintiff protectively filed his applications for DIB and SSI on September 26, 2017. (Dkt. 10 at 14, 163-73).[1] In his applications, Plaintiff alleged disability beginning September 21, 2017, due to adjustment disorder with depressed mood, cardiac arrhythmia, obsessive compulsive disorder, and anxiety. (*Id.* at 14, 63, 68). Plaintiff's applications were initially denied on January 17, 2018. (*Id.* at 14, 81-86). A video hearing was held before administrative law judge ("ALJ") Susan Smith on December 18, 2019. (*Id.* at 14, 41-60). Plaintiff appeared in Buffalo, New York, and the ALJ presided over the hearing from Falls Church, Virginia. (*Id.*). On January 8, 2020, the ALJ issued an unfavorable decision. (*Id.* at 14-25). Plaintiff requested Appeals Council review; his request was denied on October 13, 2020, making the ALJ's determination the Commissioner's final decision. (*Id.* at 9-13). This action followed.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II. **Disability Determination**

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a

finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. §§ 404.1520(d), 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. §§ 404.1509, 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. §§ 404.1520(e), 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. §§ 404.1520(f), 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. §§ 404.1520(g), 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920. Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act through December 31, 2021. (Dkt. 10 at 16). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since September 21, 2017, the alleged onset date. (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of depressive disorder, anxiety disorder, and obsessive-compulsive disorder. (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 17). The ALJ particularly considered the criteria of Listings 12.04 and 12.06 in reaching her conclusion. (*Id.* at 17-18).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform medium work as defined in 20 C.F.R. § 416.1567(c) and § 416.967(c), with the following limitations:

> Limited to low stress work, defined as having no high production quotas or fast-paced assembly; cannot work in teams or in tandem; and can have only occasional interaction with supervisors, coworkers, and the general public.

(*Id.* at 18). At step four, the ALJ found that Plaintiff was unable to perform his past relevant work as a cabinet sander, assembler, and machine operator/fabricator. (*Id.* at 23).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of laundry worker, packer, and cleaner. (*Id.* at 24). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.*).

## II. **Remand of this Matter for Further Proceedings is Necessary**

Plaintiff asks the Court to reverse or, in the alternative, remand this matter to the Commissioner, arguing that the ALJ failed to develop the record and issue a subpoena to Plaintiff's treating provider, Obot Obot, MSN, as was requested. For the reasons set forth below, the Court finds that the ALJ erred by failing to develop the record to obtain mental health treatment notes from MSN Obot, and that this error necessitates remand for further proceedings.

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). Specifically, the ALJ must "investigate and develop the facts and develop the arguments both for and against the granting of benefits." *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011). "The ALJ's duty to develop the administrative record encompasses not only the duty to obtain a claimant's medical records and reports, but also the duty to question the claimant adequately about any subjective complaints and the impact of the claimant's impairments on the claimant's functional capacity." *Puckett v. Berryhill*, No. 17CIV5392 (GBD)(KHP), 2018 WL 6061206, at *2

(S.D.N.Y. Nov. 20, 2018). "The ALJ must 'make every reasonable effort' to help the claimant get medical reports from his or her medical sources as long as the claimant has permitted the ALJ to do so." *Sotososa v. Colvin*, No. 15-CV-854-FPG, 2016 WL 6517788, at *3 (W.D.N.Y. Nov. 3, 2016) (quoting *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996)). However, the ALJ's duty to develop the record is not limitless. "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information . . . ." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (internal quotation marks and citation omitted).

The record shows that Plaintiff began receiving mental health counseling with MSN Obot beginning on August 2, 2019. (*See* Dkt. 10 at 639). On November 25, 2019, MSN Obot completed a Mental Impairment Questionnaire which diagnosed Plaintiff with major depressive disorder. (*Id.*). MSN Obot opined that Plaintiff was unable to meet competitive standards in the following categories: work in coordination with or in proximity to others without being unduly distracted; complete a normal workday and workweek without interruptions from psychologically based symptoms; and get along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes. (*Id.* at 641). He concluded that Plaintiff had marked limitations in maintaining social functioning and moderate limitations in maintaining concentration, persistence, or pace. (*Id.* at 643). MSN

Obot also opined that Plaintiff's impairments would cause him to be absent from work more than four days per month. (*Id.* at 644).

On December 2, 2019, prior to the hearing, Plaintiff's counsel wrote to the ALJ, informing her that he was unsuccessful in his efforts to collect medical records from MSN Obot. (*Id*. at 262). Plaintiff's counsel requested that the ALJ assist him in obtaining the records and issue a subpoena for the records from MSN Obot. (*Id*. at 241-42).

At the administrative hearing on December 18, 2019, the ALJ asked Plaintiff's counsel if there was any objection to the file and he responded that there was not. (*Id.* at 43). The missing records from MSN Obot were not specifically addressed, although Plaintiff's treatment by MSN Obot was discussed at the hearing. (*Id.* at 54-55). The ALJ did not provide Plaintiff an explanation for not issuing a subpoena for the records from MSN Obot, in writing or at the hearing.

Plaintiff contends that, given the incomplete record as it relates to Plaintiff's mental health treatment, the ALJ was required to issue a subpoena to obtain the missing treatment notes from MSN Obot, as requested. He argues that the ALJ's conduct violated provisions of HALLEX, "a manual that provides the Social Security Administration with a set of guidelines and procedures." *Louisiana S. v. Comm'r of Soc. Sec.*, No. 3:20-CV-00130 (BKS/CFH), 2021 WL 911691, at *5 (N.D.N.Y. Mar. 10, 2021). Specifically, Plaintiff contends that HALLEX 1-2-5-78 required the ALJ to issue the subpoena, and that her failure to expressly inform Plaintiff that she was declining to issue the subpoena violated HALLEX 1-2-5-78(D). In response to Plaintiff's argument, Defendant contends that because MSN Obot submitted a mental impairment questionnaire, it was reasonable for the

ALJ to conclude that the subpoena request was moot. (Dkt. 12-1 at 6).[2] Defendant further argues that by failing to raise the issue at the hearing or in post-hearing filings, Plaintiff himself contributed to any deficiencies in the record.

The Court agrees that the record reflects, at the administrative hearing and afterwards, Plaintiff's counsel did not reiterate his request that the ALJ subpoena the treatment notes from MSN Obot. However, the ALJ has a duty independent of Plaintiff's counsel to investigate and develop the record. *See Dillon v. Comm'r of Soc. Sec.*, No. 17-CV-4136 (PAE) (BCM), 2018 U.S. Dist. LEXIS 154897, at *49-50 (S.D.N.Y. Sept. 7, 2018) ("[W]hile an ALJ may rely on the claimant's counsel in the first instance to obtain missing treating records, [he] must nevertheless take 'independent steps to complete the record' if necessary. Thus, courts in our Circuit have frequently found that an ALJ does not satisfy [his] duty to develop the record by relying on the claimant's attorney to obtain the missing records.") (citations omitted), *adopted*, 2018 U.S. Dist. LEXIS 163279 (S.D.N.Y. Sept. 24, 2018); *see also Cancel v. Colvin,* No. 14-CV-2034 PKC, 2015 WL 865479, at *5 (S.D.N.Y. Mar. 2, 2015) ("It is somewhat troubling that [the plaintiff's] counsel at the 2012 hearing failed to bring these deficiencies in the medical record to the ALJ's attention; counsel is thus at least partly responsible for the ALJ's error.

---

[2] Defendant further contends that Plaintiff's counsel's letter requesting a subpoena for "mental health records" could reasonably be inferred to have referred to treatment records *or* to the medical opinion statement. (Dkt. 12-1 at 8). The Commissioner argues that "[g]iven this misleading language, the ALJ could reasonably conclude that Plaintiff's subpoena request was moot, outdated and filed in error." (*Id.*).

Nevertheless, the law is clear that an ALJ's duty to develop the record exists irrespective of whether the claimant is represented.").

As explained above, Plaintiff's counsel indicated by letter dated December 2, 2019, that he was requesting that the ALJ assist him in obtaining records from MSN Obot by issuing a subpoena. HALLEX 1-2-5-78 provides that: "If a claimant submits a subpoena request at least ten business days before the hearing . . ., the ALJ will evaluate the request," and "[w]hen all other means of obtaining the information or testimony have been exhausted . . . an ALJ will issue a subpoena if: [t]he claimant or ALJ cannot obtain the information or testimony without the subpoena; and [t]he evidence or testimony is reasonably necessary for the full presentation of the case." HALLEX 1-2-5-78(D) also outlines the procedure for an ALJ to follow for when a subpoena request is denied:

> If an ALJ denies a claimant's request for a subpoena, the ALJ must notify the claimant of the denial, either in writing or on the record at the hearing. In either situation, the ALJ will enter the request into the record as an exhibit. If the denial is in writing, the ALJ will also enter the denial notice into the record as an exhibit. Whether on the record or in writing, the ALJ will explain why the ALJ declined to issue a subpoena.

Hallex 1-2-5-78(D). Here, as noted, the ALJ did not notify Plaintiff that the subpoena request was being denied or provide any explanation for that determination.

While the procedures in HALLEX are not binding precedent, *see Benz v. Saul*, No. 19-CV-371F, 2020 WL 5814347, at *5 (W.D.N.Y. Sept. 30, 2020) (noting that "cases within the Second Circuit have repeatedly found HALLEX guidelines are not binding on the ALJ"), the ALJ's failure to follow the guidelines, as here, is not wholly irrelevant. *See Janet R. v. Comm'r of Soc. Sec.*, No. 1:19-CV-1100 CJS, 2021 WL 1054369, at *6 (W.D.N.Y. Mar. 19, 2021) ("In this regard, the Court is aware that the Hallex may not have

the force of law. Nevertheless, the ALJ's failure to follow the Hallex's direction in this instance reinforces the Court's conclusion that she abused her discretion by refusing to admit Dr. Taylor's opinion." (citing *Marcano v. Berryhill*, No. 17-CIV-4442 (KMK)(PED), 2018 WL 5619749, at *12 (S.D.N.Y. July 13, 2018) ("Although failure to follow HALLEX procedures is not error per se, this HALLEX directive reinforces my conclusion that the ALJ erred at step three.")); *Shari L. v. Saul*, No. 1:19-CV-851 (ATB), 2020 WL 3971510, at *3 (N.D.N.Y. July 14, 2020) ("Although the Second Circuit has not specifically ruled on this issue, it continues to rely on HALLEX policies to determine whether substantial evidence supports the Commissioner's underlying decision, and whether the Commissioner applied the correct legal standards.").

But irrespective of any violation of the HALLEX guidelines, the lack of more specific evidence relating to Plaintiff's mental health treatment is particularly problematic in this case where MSN Obot opined that Plaintiff's mental limitations were more severe than the other providers of record had opined. Indeed, the ALJ's reasoning in her written determination acknowledged that MSN Obot's opinion was not consistent with the other evidence of record she considered. (Dkt. 10 at 22 ("With the exception of the late opinion of Obot Obot, MSN, described later in this decision, no examining source opined to disabling limitations in mental functioning beyond the initial two weeks from Dr. Thomas . . . ")). Thus, obtaining MSN Obot's treatment notes was not a meaningless exercise if the records could potentially reflect information that could bear on or change the ALJ's ultimate determination as to Plaintiff's disability. By not obtaining these records, the ALJ was unable to appropriately assess the opinion's consistency with the treatment records, an

important factor in weighing medical opinions in general and particularly so here, where the opinion potentially contained limitations supportive of a finding of disability. *See Marla Ann. Y. v. Cmm'r*, No. 20-CV-6459S, 2022 WL 203683, at *4 (W.D.N.Y. Jan. 24, 2022) (holding that the lack of counseling notes underlying medical opinion created "an obvious gap in the record").

Further, this is not an instance where the ALJ was not alerted to the importance of the missing records. Plaintiff specifically requested that the ALJ issue a subpoena to assist him in obtaining these records in support of his application. *See Frederick v. Comm'r of Soc. Sec.*, No. 16-CV-898-MJR, 2018 WL 4178284, at *1 (W.D.N.Y. Aug. 31, 2018) ("It is incumbent upon the ALJ to develop evidence where it is apparent from the face of the record that the record lacks necessary information."). By not issuing a subpoena or explaining why she was choosing not to issue one, the ALJ leaves the Court only able to speculate as to why the records were not procured or what information they may have contained. *See Kennedy v. Comm'r of Soc. Sec.*, No. 17-CV-908-FPG, 2019 WL 988889, at *3 (W.D.N.Y. Mar. 1, 2019) ("It is simply impossible to conclude with an absolute certainty the degree to which such records address plaintiff's limitations, and whether or not their review would persuade the ALJ to alter his decision regarding plaintiff's disability in general and RFC in particular."); *Shaffer v. Comm'r of Soc. Sec.*, No. 16-CV-874-FPG, 2018 WL 5668511, at *2 (W.D.N.Y. Nov. 1, 2018) ("Had the ALJ obtained the missing records from Spectrum, it is possible that he would have afforded more weight to NP Turk's opinion, which was favorable to Plaintiff."); *see also Hickman ex rel. M.A.H. v. Astrue,* 728 F. Supp. 2d 168, 173 (N.D.N.Y. 2010) ("The ALJ must build an accurate and logical

bridge from the evidence to [his] conclusion to enable a meaningful review." (internal quotation and citation omitted)).

In sum, the Court concludes that the ALJ was on notice of the gap in Plaintiff's mental health record, and that this gap at least partially informed her determination that Plaintiff is not disabled. The ALJ had a duty, independent of Plaintiff and his counsel, to ensure that the record was complete so that she could make a determination that is supported by substantial evidence. The ALJ failed to fulfill her duty in this case.[3] *See Jones v. Berryhill,* No. 19CIV56ATSLC, 2020 WL 907119, at *10 (S.D.N.Y. Jan. 27, 2020) (remanding where claimant requested subpoena, ALJ did not respond to the request, and the missing records were necessary to show treatment leading up to the hearing), *report and recommendation adopted*, No. 19CIV56 (AT)(SLC), 2020 WL 905750 (S.D.N.Y. Feb. 24, 2020); *Harris v. Berryhill*, 293 F. Supp. 3d 365, 369 (W.D.N.Y. 2018) ("Ultimately, an ALJ is expected to make 'every reasonable effort' to fully and fairly develop the record, taking into account the circumstances of the case. Under the particular circumstances presented here — where the claimant's impairments are primarily mental in nature, where the sole treating mental health care source refused to provide its treatment records, where the evidence in the incomplete record nonetheless suggested serious difficulties in one or

---

[3] Further, in finding MSN's Obot opinion not persuasive, the ALJ relied in part on the fact that Plaintiff had only begun seeing MSN Obot recently and was "based on only two encounters with the claimant." While the medical source statement reflects that Plaintiff's initial contact with MSN Obot was on August 3, 2019 and his last appointment was November 23, 2019, it is not clear that these were Plaintiff's only two visits with MSN Obot and indeed, Plaintiff's testimony at the hearing arguably reflects more than two visits with MSN Obot. (Tr. 10 at 44-45). Obtaining MSN Obot's treatment records would also clear up this potential inconsistency.

more areas of mental functioning that cried out for amplification, and where the ALJ declined to exercise his power to subpoena the missing records — the ALJ cannot be said to have made 'every reasonable effort' to complete the record.") (citations omitted). On remand, the ALJ should work to ensure that the record as it relates to Plaintiff's mental health treatment is complete, including issuing a subpoena to attempt to obtain Plaintiff's mental health treatment notes from MSN Obot.

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 11) is granted to the extent that the matter is remanded for further administrative proceedings. Defendant's motion for judgment on the pleadings (Dkt. 12) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: February 2, 2022
Rochester, New York